The next matter, number 23-1947, Gustavo Avilio Mendez Nolasco et al. versus Merrick B. Garland. At this time, would counsel for the petitioners please introduce himself on the record to begin. Good morning, and may it please the Court. Christian Meyer on behalf of the petitioners. Could you move your mic closer to your – is that better? Much better. Christian Meyer on behalf of petitioners. If I may, I'd reserve two minutes. You may. Petitioners are seeking review of the Board of Immigration Appeals, denial of their appeal based on the sole issue of whether petitioners established that their four qualifying relative children would suffer the requisite exceptional and extremely unusual hardship. Petitioners' appeal is based essentially in two core matters. As raised in the opening brief, petitioners assert that the Board fundamentally mischaracterized the record in reaching its conclusions. Now, while the Supreme Court held in Wilkinson that the underlying factual determinations are not subject to review, there still remains the exception for questions of law as well as constitutional claims. Now, this Court has routinely held in immigration matters that when reviewing the agency decision, they need to be ensured that it is sufficiently reasoned as a matter of law. Now, failing to consider evidence that's relevant in the context of the seminal cancellation cases renders the Board's decision insufficiently reasoned. Further, the Board only considered educational and financial hardship factors. Now, when the statute was enacted, the standard changed from extreme hardship to the exceptional and extremely unusual hardship. Now, when that occurred, the Board issued Montreal, and it made clear in Montreal that those same factors, things like the sociopolitical conditions in the home country, things like family ties, things like length of residency, must be considered, albeit at that higher standard. The Board entirely failed to analyze any of those factors, which all go towards the extreme hardship. We have four children, all of young age at the time, with the exception of the legal permanent resident eldest child. And what are you trying to say is exceptional and extremely unusual? Are you trying to have us hold the fact that there are four children instead of three or four makes it exceptional and extremely unusual? Well, the Board's own precedent does hold that each of these determinations must be made on a fact-by-fact, you know, a case-by-case basis. But some facts are going to be relevant and others less so. And I'm struggling as to what facts do you think make this case exceptional and extremely unusual? The lack of any – In these cases, they're all sad cases. I'm struggling with the notion of what's exceptional about this case. The lack of any Spanish-language fluency. I would point the Court to Matter of Racines where that was found, likewise to Racines, four qualifying relatives, none of whom were fluent at all. And the Court there found that in the aggregate, along with financial considerations, that rose to substantially beyond what would be normally expected. Moving, I guess this is a good segue to the second issue, which is, this Court has left open what the standard of review for this question is. Figueroa, in the context of hardship for Nicara, you know, left this open but stated that some deference should be provided. However, under Loperbright, this Court needs to be convinced that the agency's determination is well-reasoned. Things like considering all of the circumstances that are facing these children would lend to a greater level of deference. I believe that – Michael, I'm sorry, can I just move you back, though, to your first point? Because I just want to make sure I understand your argument. What is the aspect of the record that you think the agency fundamentally mischaracterized? Is it just that the children don't speak Spanish? Is that the only point? I believe that, and they also determined that the qualifying relative, the eldest child, would remain here when it was repeated throughout testimony that the child would accompany the family back to Guatemala in the event of removal. But isn't that a factual finding that we can't review? While it does come down to facts, whether the Board is accurately taking a look at the record is – it does come down to a question of whether they're appropriately categorizing it. I don't think that Wilkinson stands to the point that the Board can say entirely mischaracterized. Let's say that there is a lung cancer, for example, facing a qualifying relative. They can't say, oh, well, they have minor respiratory problems or something like that. That renders it fundamentally inaccurate in a way that affects the fundamental fairness of the appellate review. So while, yes, it does involve an assessment of the facts, ultimately whether the Board was engaging in a well-reasoned decision that is sufficiently well-reasoned is a question of law, even though it does involve some analysis of the facts. Even if – let's just say for a moment we could review that and the Board got it wrong and the oldest child would return. What is, again, what is sort of the legal error that would require us to remand here? Why would that amount to exceptional? Well, going back to Racinus, the fundamental non-fluency of the children was one of the primary factors that the agency found that there was an extreme hardship or an exceptional and extremely unusual hardship in Racinus. So it brings it in line with the agency's prior decision-making. Further, the failure to consider other relevant evidence, like the hardship factors from OJO that relate to extreme hardship, the failure to consider those is, again, not engaging in an analysis of the case by case. But what are the factors other than the length? That's what I'm trying to understand from you. Other than the fact that the children, including the oldest child, may not speak Spanish or don't speak Spanish in the review, is there anything else? Yes. So those are in relation to the mischaracterizations of the record. But further, the board failed to analyze those factors that I just noted, the sociopolitical landscape, length of time in the country, family ties, things like that, which the board itself has held must be considered, albeit at that higher standard. Can I just add, there's two different things you seem to be saying. I want to make sure either you're saying one of them or you're saying both of them. I'm saying both. Are you saying this case is identical to Racines and therefore it's a legal error to have granted in Racines and denied here? I think that there are, under the proper consideration of the record, that the children have no Spanish fluency. I believe it does fall within the meaning of exceptional, extremely unusual hardship as to Racines, as well as matter of Antezola, which that case. And then if independent of the argument that there was settled BIA precedent that this is inconsistent with, is there an argument that you're making, and is that argument that it sounds like that's an argument that somehow there was a legal error in the characterization of the record? Yes. And is that the language point? Is there anything beyond that that you're making the argument about? I'm not sure if I was properly discussing it well. However, yes, not just the mischaracterization, but the failure to consider all relevant facts. That is not in line with the board's precedent on any cancellation determination. So the failure to do that is not falling within, you know, the guidelines of how the board is supposed to adjudicate these type of determinations. So, yes, remand would be warranted to properly characterize the record and consider all relevant factors, which precedent requires. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the respondent please introduce herself on the record to begin? May it please the Court, Your Honors. May it please the Court, Your Honors. Joanna Watson on behalf of Respondent and United States Attorney General. Substantial evidence supports the agency's determination that petitioners did not demonstrate the records that exceptional and extremely unusual hardship to their qualifying relatives. Contrary to Petitioner's Counsel's argument that the board mischaracterized the record, the board Can I just stop you just for one second on just the standard of review, which may not matter ultimately, but just so I understand what the government's position is. The substantial evidence test is usually the test under the APA for a factual finding, correct? But after Loper-Bright, are we free to treat this as a factual finding? Under Loper-Bright, didn't do away with the deference? That's a different question. Loper-Bright, as I read it, is an interpretation of the APA. Correct. Right? And it's standards of review. And the APA provides that the standard of review for a factual finding is substantial evidence. But everybody agrees after Wilkinson's this is not a factual finding. So how could the standard of review under the APA be substantial evidence? Well, Wilkinson talks about how it's a deferential. That's true. Okay. I see what you're saying. It could be a views of discretion. It could be something. But I still don't understand how under the APA, the substantial evidence test, which applies to factual findings, could possibly be this. This is a factual finding.  It's highly factual. It's an application of I thought Wilkinson made clear that this is not a factual finding. That's why when we're talking about the Now, you may be saying that the particular challenge is to a fact. But as I understand it, they're challenging the application of the standard to fact, which is what Wilkinson treated as a mixed question. Right. Applicational law to undisputed facts. Correct. So substantial evidence applies to the factual finding. If they're undisputed, we can throw out the substantial evidence standard. There's no dispute about them. Why do we need to use substantial evidence? There's no dispute about them. Now we're just looking at those undisputed facts relative to law. What does substantial evidence have to do with that question? Well, if you're applying a standard, I mean, abusive discretion is the other standard. That sounds good. Well, I mean, I go with it because it's highly factual, the substantial evidence. But ultimately, it's going to come out the same way. I mean, in this case, they simply haven't shown that the records said extremely exceptional and extremely unusual hardship. And the agency fully evaluated all these facts. There really isn't a quibble over whether the children speak some Spanish versus a little bit of Spanish. I mean, the immigration judge recognized that. The children are all healthy. They're doing well in school. The parents have lots of assets that they could liquefy in order to make the transition easier. I mean, this is just not, it doesn't reach to Racines where it was, you had a single divorced mother who was solely responsible for six children, had no money in the bank whatsoever, and they said that even in that case, I mean, it was a close call, whether it was the exceptional and extremely unusual hardship. And you don't have any of those factors here. And getting to the mischaracterization of the adults on Aldo, he possibly is a U.S. citizen now, but he's 20 years old at the time, and the immigration judge, well, that was a dispute over facts. You know, on the one hand, saying that he's going to go with them, and then the immigration judge saying that he's an adult and can make his own decisions. So that's unreviewable. I wanted to get to that. Even on that point, as I understand it, maybe you read it the same way. I didn't understand the IJ, at least as the BIA characterized it, as saying he won't go. I just understood the IJ to be saying he could stay. Yeah, that's correct. And it's futility. I mean, he's 26 years old now. He's presumably finished community colleges education, and then they said that he was possibly a legal citizen at this point. And that's one of the other factors that the immigration judge considered here was their possibility of adjusting in another way, and, you know, this adult-son competition for them. I think that doesn't the record say he's been naturalized now? It's not officially in the record. It's in the record because petitioners, I think, on appeal to the board made a notation, but there's not the official naturalization of these kids. So nothing was overlooked here. And even under Loper-Bright, there's still a stare decisis, and this court in Figueroa looked at a lot of these same things, the conditions in the country, and, you know, that wasn't enough. The length of residence, these people have been here a long time, and, you know, they have ties to the United States and everything, but that in itself is not enough to do that here. I mean, this just isn't an exceptional, extremely unusual hardship in this case. And getting to, I just wanted to also respond to the argument that the board didn't address matter of O, which went to suspension of deportation, which was a lesser standard. And in Montreal, I believe it's Montreal, the board discusses how a lot of these factors overlap, but the standard is much higher. So it wouldn't make sense for the board to look at something under a former statute as opposed to Montreal. And getting to the deference to the agency, I mean, Loper-Bright, I mean, the board is adjudicating these cases for over 20 years, as it's 2001 in Montreal, and this court, you know, relied on matter of Montreal and Figueroa. And I'd ask, well, three more. If there's no more questions, then in conclusion, I'd ask that the court uphold the agency's determination that exceptional and extremely unusual hardship had not been met in this case and deny the petition. Thank you. Thank you, counsel. At this time, would counsel for the petitioners please reintroduce himself back on the record? He has a two-minute rebuttal. Christian Meyer on behalf of petitioners. So going back to this court's interpretation of hardship, Loper-Bright has found that the, you know, the defining of a statute is exclusively a judicial function. So this court is not bound by the agency's determination. I believe a respondent filed a 28-J response that brings up Moctezuma-Reyes, a Sixth Circuit case that addressed a similar issue. That court found that there's no specific language within the hardship statute that expresses language conferring discretion on the agency to interpret that broad statute. So that brings it within this court's, their ability as well as the necessity to define what that hardship standard is. Now, certainly the court can look to the agency's determinations. However, I would note in those seminal cases, Monreal, Ondozola, where there was that initial change, the dissents in those note that the fact-specific inquiries are of utmost importance because not all financial hardships are the same. Not all educational hardships are the same. That's why the board has gone through and in a case like, say, Racinas, you know, found there to be extreme or exceptional and extremely unusual hardship just on the basis of financial and, you know, language considerations. Counsel, I think what I'm still struggling with, though, is that just even under Wilkinson, you know, putting aside the board's precedent, Wilkinson says that to meet the standard, the statutory criteria for eligibility for cancellation, the situation of the non-citizens has to be different than sort of the norm essentially, right?  And so I think what we've been trying to ask you here is it seems within the norm that there would be children who wouldn't be fluent in a language other than English. So what brings this case out of the norm based on the Supreme Court's own definition of the statutory standard? So I would invite the court to take a look at the dissents in both Monreal and Delosa, which I believe, you know, speak directly to that, which is while financial considerations, you know, or educational constraints or language are maybe common factors, they're not all the same. And here it is substantially beyond. We're talking about three, at the time, three younger United States citizen children who have never been to the country of Guatemala. That's not the case for every single person who's subject to their parents' removal. Likewise, fluency, the ability to obtain, you know, a comparable education level. The record makes clear here that not only are the children going to be seriously hampered by their Spanish fluency, but within Guatemala, this is from the UNHCR in the State Department's reports, but access to education is challenging because of onerous requirements for formal access, as well as education through the secondary level is not obligatory. And less than half the children in the country obtain secondary education. In terms of the thing I'm struggling with is your description is such that it's hard to conceive of any case where there are young children who speak only English that wouldn't qualify as an exception, exceptionally unusual, within your definition of that phrase. And that's a contradiction in terms. If everybody qualifies, it's certainly not exceptionally unusual. Well, I don't think it's the case that every single qualifying relative would face these exceptions. In every qualifying, every family with young kids who aren't English speakers, they're all going to have the language barrier. They're all going to have the difference in the educational system. That's from the university. So I believe that's why the board has required that you look to each specific case-by-case basis. And what's different about this case? I believe the aggregate hardship that would be faced. We're not just talking about the diminishment in educational opportunity. We're talking about taking the children from what the immigration judge defined as stable, they're doing well in school, and putting them in a situation where, yes, they're going to face educational difficulties. The record also indicates that those educational difficulties are likely going to result in lifelong extreme hardships when it comes to finding a job, when it comes to acclimating to this country. And while true that this may be an occurrence for some qualifying relatives of cancellation applicants, there's not a categorical bar. The statute is not, unlike other immigration statutes, the cancellation statute doesn't say, here are examples. So a categorical bar to an educational determination or financial, you know, is not in line with the reading of the statute, and I don't think the intent of Congress to completely foreclose. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.